The Chicago and Eastern Illinois Railroad Company

*v.*

Frank Snedaker.

*Opinion filed October 23, 1906—Rehearing denied Dec. 5, 1906.*

.1. Railroads—*railroad should use reasonable care to keep machinery in reasonably safe condition.* The fact that railroad employment is hazardous to the employees even though they exercise care does not relieve. the railroad company from using ordinary care to supply reasonably safe appliances and machinery and keep them in reasonably safe condition, and the extra hazards resulting from its failure to perform such duties do not come within the ordinary risks asumed by the employees.

2. Same—*what questions should be submitted to jury.* Whether semaphore wires were properly constructed and cared for, whether the plaintiff was familiar with their location or by ordinary prudence should have known of their location and the danger resulting therefrom, and whether the coupling appliance upon one of the cars the plaintiff was attempting to uncouple was defective, are questions to be submitted to the jury where the evidence bearing upon them is conflicting.

3. Same—*when a railroad is liable for injury to an employee.* Whether the injury to a freight conductor who tripped over semaphore wires in the night time while walking beside a car holding up the uncoupling lever, which would not catch, resulted from the negligence of the company in constructing and caring for the wires or in constructing and caring for the coupling appliance, or both combined, the company is liable if the employee was not at fault.

Appeal from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Williamson county; the Hon. W. W. Duncan, Judge, presiding.

Appellee recovered judgment for $6000 against appellant, in the circuit court of Williamson county, for injuries received while acting as one of its freight conductors.

At the time of the injury, September 7, 1903, appellee was about forty years of age and had been engaged in rail-

roading seventeen years. He was then, and had been for some ten months, a freight conductor on appellant's road running from Marion to Thebes, Illinois, a distance of about one hundred miles, earning from $120 to $125 a month. The Mobile and Ohio railroad crossed the tracks of appellant about fifteen miles from Thebes, at a small station called Tamms. In 1901 an interlocking switch plant was installed at this station, operated from a tower on the east side of appellant's tracks near the crossing of the two railroads. Rods and wires ran north along the east side of appellant's tracks from this tower some three hundred feet, when they turned to the left, crossing the tracks at right angles between the ties under the rails. The wires, two in number, turned to cross the track about six feet from the end of the ties, and in this space of six feet they stood six or eight inches above the ground, one a little above the other. After crossing the tracks these wires extended north on the west side of the track, supported by pulleys on short posts, to a semaphore pole. Some time after the interlocking switch had been installed a stub or side-track was constructed along the east side of the main track of the appellant, commencing about twenty-four feet north of the place where the wires crossed the main track. A little further north than the commencement of the side-track, and on the opposite side of the main track, was a water tank. Appellee's train was behind time on the night of the injury, when it arrived from the north at Tamms at 11:10 P. M. One of the cars on the train was to be set out on the stub-track. The "swing" brakeman, who usually did the uncoupling, was sick in the caboose, rendering it necessary for appellee to uncouple the car himself. This car was the third from the engine, which required the running of the engine and three cars south of the switch and then backing up. The coupling apparatus in use on the train, and which appears to be in general use on such trains, was so constructed that the knuckle which hooked the coupler to the corresponding coupler on the next car was kept in place by a

lug or pin. This lug could be raised for a short distance,—enough to release the knuckle and thus uncouple the two cars,—by means of a lever fastened to the end of the car immediately above it and connected with it by a short chain. This lever in its turn was fastened to a rod or shafting which ran horizontally along the end of the car and terminated in another lever near the side of the car, in order to enable the train to be uncoupled without going in between the ends of the cars. The evidence shows that this chain of the coupler on the second car, and between it and the third car, was so short that it would not permit the lever to be raised high enough to fasten on the inclined plane or device provided for that purpose and thus keep the cars uncoupled without holding up the lever. When appellee discovered this fact he held up the lever so as to keep the coupling pin or "dog" raised and the cars uncoupled and walked along the east side of the track towards the switch, with his lantern in his right hand and the lever in his left. If the device for holding up the lug had worked properly he could have uncoupled the last car, fastened the lever so that it would have remained uncoupled, and let the engine back the three cars to the proper place without his further assistance, as, when the engine stopped, the headway of the last car would shunt it along onto the switch. When appellee thought sufficient speed had been obtained to shunt the car in on the stub-track he signaled with his lantern to stop the engine, and while so doing tripped on the semaphore wires and fell with his left arm in such a position that it was crushed by the cars and amputation rendered necessary.

The declaration contained four counts. The first charged negligence in maintaining wires or rods over which plaintiff tripped, about eight inches above the ground, making the place where plaintiff traveled in the performance of his work in setting out the car on the stub-track dangerous and hazardous; the second charged the failure of the defendant to keep a conspicuous light at the place where the rods and

wires crossed the track to warn plaintiff of their location; the third, the failure of defendant to have the wires graded over or covered by boxing; and the fourth, the use by the defendant of cars with defective brakes, rods, chains, couplings and appliances, which required plaintiff to move along the side of the cars backing in on the stub-track to cause the car he was required to set out to be uncoupled from the other cars on the train.

Defendant moved, at the close of plaintiff's evidence, to instruct the jury to return a verdict of not guilty on each count, on the ground that the evidence then introduced was not sufficient to support the verdict. A motion was also made that the court direct a verdict of not guilty on the fourth count because of variance between the proofs and the declaration. These motions were overruled, and were renewed, in substance, when the evidence was all in, and again overruled. On appeal the judgment was affirmed by the Appellate Court.

O. A. Harker, (H. T. Dick, and E. E. Denison, of counsel,) for appellant:

The master is not bound to adopt any particular instrumentalities or methods of doing business, and he fulfills his duty in that regard to his servants when he adopts those which are reasonably safe and suitable for the purpose. *Railroad Co.* v. *Lonergan,* 118 Ill. 41; *Pennsylvania Co.* v. *Lynch,* 90 id 333; *Richardson* v. *Cooper,* 88 id. 270; *Railroad Co.* v. *Avery,* 109 id. 314; *Mattson* v. *Construction Co.* 90 Ill. App. 260; *Milling Co.* v. *Schaefer,* 101 id. 500.

Although the master is bound to protect his servants from exposure to unnecessary and unreasonable risks, he cannot be charged with a breach of duty in that regard simply on the ground that a safer method or safer instrumentality than that from which the injury resulted was available and might have been adopted by him. *Railroad Co.* v. *Driscoll,* 176 Ill. 330.

Where there is a difference of opinion among experts as to the relative safety of two different methods of doing certain work and the different appliances used therein, that fact should be regarded as conclusive against the inference of culpability in selecting either one of the methods. *Harley* v. *B. C. M. Co.* 142 N. Y. 31; *Kehler* v. *Schwenk*, 144 Pa. 348; 1 Labatt on Master and Servant, note 3, p. 85.

The servant assumes all the ordinary risks incident to his employment. He is presumed to contract with reference to them. The inability to maintain an action is a peremptory conclusion of law, if it is apparent that the injury resulted from such a risk. 1 Labatt on Master and Servant, 588; *Railway Co.* v. *Black*, 88 Ill. 112; *Furnace Co.* v. *Abend*, 107 id. 44; *Milling Co.* v. *Spehr*, 145 id. 329; *Coal Co.* v. *Haenni*, 146 id. 614.

Not only does he assume the hazards of the business as generally conducted, but he assumes the hazards arising from the peculiar method in which his master conducts it. *Stafford* v. *Railroad Co.* 114 Ill. 244; *Pennsylvania Co.* v. *Backes*, 133 id. 255.

If a servant, knowing the hazards of his employment as the business is conducted, is injured while engaged therein, he cannot recover against the master for the injury although the business might be conducted in a safer mode. *Railway Co.* v. *Britz*, 72 Ill. 256; *Railroad Co.* v. *Flanigan*, 77 id. 365; *Simmons* v. *Railroad Co.* 110 id. 340.

Neither temporary forgetfulness nor a failure on the part of the servant to comprehend the dangers will avail him if the dangers are open and obvious. If the dangers are open and obvious, so that by the exercise of ordinary care in the use of the machinery or in working with it he will have a knowledge of such danger, he is bound to take notice of it and will not be heard to say that he had not such knowledge. *Armour* v. *Brazeau*, 191 Ill. 117; *Wrisley Co.* v. *Burke*, 203 id. 250.

William A. Schwartz, William H. Warder, and Hosea V. Ferrell, for appellee:

It is the duty of the master to exercise reasonable care to provide reasonably safe appliances and machinery for his servant in doing the work required, and the master must exercise reasonable care to see that such machinery and appliances are in a reasonably safe condition and repair. This applies to cars in possession of the master, whether owned by it or not. *Sack* v. *Dolese,* 35 Ill. App. 636; *Railroad Co.* v. *Avery,* 109 Ill. 314.

While a railroad company need not construct its road in any particular way, yet it must so construct the road that the place where the employees are required to work is reasonably safe for the performance of the work required. *Railroad Co.* v. *Thompson,* 112 Ill. App. 463; *Railroad Co.* v. *Sanders,* 166 Ill. 270; *Railroad Co.* v. *Morrissey,* 177 id. 276; *Railroad Co.* v. *Welch,* 52 id. 183; *Railroad Co.* v. *Whalen,* 19 Ill. App. 116; *Railroad Co.* v. *Swett,* 45 Ill. 197.

Switchmen, while discharging their duties and having their attention constantly directed to moving cars, cannot be expected to give much attention to the condition of the road-bed, tracks, ties, etc. *Railroad Co.* v. *Hines,* 132 Ill. 161; *Railroad Co.* v. *Clifford,* 99 Ill. App. 381; *Railroad Co.* v. *Sanders,* 166 Ill. 270.

Whether the master has exercised reasonable care to provide reasonably safe appliances for the use of his servant and a reasonably safe place for the servant to work are questions of fact for the jury. *Railroad Co.* v. *Wilson,* 87 Ill. App. 360.

The servant does not assume the risk of the negligent omission of the master to provide him with a reasonably safe place in which to work. *Coal Co.* v. *Barringer,* 109 Ill. App. 185; *Railroad Co.* v. *House,* 172 Ill. 601.

Although the servant, in a general way, may know of the existence of the defect in the place, yet it cannot be held,

as a matter of law, that he thereby assumes the risk. It is directly and peculiarly a question of fact for the jury to determine whether, under all the circumstances of the case, the servant knew and assumed the risk. *Howell* v. *Railroad Co.* 208 Ill. 155; *Railway Co.* v. *Dudgeon,* 184 id. 477; *Show Case Co.* v. *Blindauer,* 175 id. 325.

Where there is a general verdict under a declaration containing several counts, it will be sufficient if the evidence sustains any one of the counts. *Pennsylvania Co.* v. *Backes,* 133 Ill. 255.

Mr. Justice Carter delivered the opinion of the court:

Appellant urges that the court should have directed a verdict for the defendant on the fourth count of the declaration on the ground of variance between the count and the proof given to support it, insisting that the count charges that the defective appliances, chains and couplings were upon the car to be switched in onto the stub-track, whereas the proof showed that they were upon the car from which said car so to be switched was uncoupled. We think a fair reading of the entire count shows that this criticism is not well taken. The admission of evidence on this question of defective coupling appliances was not objected to by appellant on the trial. The fact that the defective coupling was not on the car which was being switched but on the car from which it was being uncoupled does not seem to us to be material. If appellant had been surprised by this alleged variance in the proof it should have so stated at the time of the trial.

The principal contention of appellant is, that on the evidence the case should have been taken from the jury. Some discussion is found in the briefs as to the right of this court to review evidence where the case has been first passed upon by the Appellate Court. By the terms of the statute all controverted questions of fact are settled by that court when it approves the verdict of the jury. This court has decided many times that on a motion to take the case from the jury

223—26

the only question that can be here reviewed is whether or not there is any evidence in the record fairly tending to support the plaintiff's cause of action. The weight of the testimony is never involved. *Chicago City Railway Co.* v. *Martensen,* 198 Ill. 511; *Chicago and Alton Railroad Co.* v. *Howell,* 208 id. 155; *Chicago and Eastern Illinois Railroad Co.* v. *Schmitz,* 211 id. 446; *Blakeslee's Express Co.* v. *Ford,* 215 id. 230; *Chicago Union Traction Co.* v. *Lundahl,* id. 289.

Appellant insists that appellee's injury was not caused by any negligence on its part; that appellee assumed the risk of any injury which might occur from these semaphore wires or from the coupling appliances in question, and that there is no credible evidence which shows to the contrary. It is contended by appellee that the semaphore wires should not have crossed the track at the point in question, or if they did, they should have been covered in some way to prevent appellant's employees from tripping over them. At least five witnesses testified on the practicability, from a working railroad standpoint, of boxing or covering the wires at this point. Two of these, testifying for the plaintiff, had years of practical experience in running trains. A third, also testifying for the plaintiff, was a civil engineer, who had given considerable study to the special question and had been employed at least once for the purpose of locating and installing semaphore wires in a switch yard. All three of these witnesses agreed that it would be practicable to cover or box wires at this point so plaintiff would not have tripped at the time he was switching the cars. Two witnesses, both with large experience in such matters, testified for the defendant on this subject. Both were in charge of installing semaphore wires,— one for appellant company and the other for the Illinois Central Railroad Company. Witness Dunham, employed by the Illinois Central Railroad Company, stated that railroads did, at times, cover semaphore wire lines, but it was not the common practice; that they covered them at street and road crossings or where such wires passed directly in front of sta-

tion platforms; that the wires in question could have been boxed, but such a plan would cause a series of bridges along the right of way, and that whether such bridges would be practicable from a railroad standpoint would depend upon local conditions. This witness was not familiar with the local conditions at Tamms. Both of these experts testified that where wires of this kind were boxed it was found that dirt and other rubbish would accumulate in the box, and that during the winter months surface water would run in and freeze, and that there was danger from these causes if the wires were covered or boxed, that they would not properly work, and that serious accident might thereby be caused.

Appellant claims that the law permits the employer to carry on his business in his own way and to adopt any known pattern or description of instrumentality, provided such instrumentality or method of work is recognized as reasonable and safe for the use to which it is put; that appellee knew of the wires, as he had passed over the ground between the water tank and station many times during the months immediately previous to this accident. There is testimony tending to show that appellee had previously walked on the side of the track where these wires were, and necessarily over them when walking there in the line of his duty. He himself testified that he knew generally where the wires were, but that he was accustomed to walk along between the rails at the point where the wires crossed under the track in a groove or space between the ties. Whether he would have occasion to notice them especially in passing was a question for the jury on the facts presented. He also stated that he did not think he himself had ever been called upon before to do the work of uncoupling cars when switching them onto this stub-track, although there is evidence by one of the appellant's employees that he had seen him before this help uncouple cars at this point.

Counsel for appellant repeatedly urge that there is no evidence in the record to indicate that the coupling appliance

was defective.  All the witnesses who testified on this point contradict this.  Plaintiff himself testified that when he attempted to uncouple the car he raised the lever and found that the chain was so short that while he could uncouple the car he could not pull the lever onto the inclined plane where it should have been retained, in which case it would not have been necessary for him to have walked along the side of the car to hold up the lever.  Every witness, to the number of six or seven, testifying on this question agreed with him, some of them calling the device a catch, fastening, hook or dog, instead of inclined plane.  Appellant called no witness as to the defective coupling.  It is therefore fair to assume that the testimony given for appellee on this subject is correct.  It is true that some of the witnesses also testified that frequently a conductor or brakeman would be seen walking alongside a train holding up the lever;  but a fair reading of their testimony shows that this was only done when the lever for some reason would not properly work and hold the lug or pin up so that the cars would remain uncoupled.  They also testified that if the coupling appliance was defective, as was this, the plaintiff followed the usual and customary railroad practice in assisting in the switching of this car.  If we understand the evidence, the very purpose of the lever being placed on the end of the car is to render unnecessary the employee going between the cars or walking along by the cars in uncoupling them, thereby greatly lessening the risk of injury.  If, as appellant insists, this defect was one of construction, then the coupling certainly was defective;  if the chain was short because it had been made so by mending, then proper care had not been taken in that respect.  From the very nature of this coupling appliance, if it be properly constructed, when the lever is raised the chain will be long enough to permit the lever being shoved onto or against this inclined plane, dog, hook or fastening in such a manner that it will be held up, so that the employee will not be compelled to walk along beside the car for that purpose.

It is not only the duty of the employer to furnish reasonably safe machinery for use, but also to use reasonable care in keeping such machinery in a safe condition. This court, in *Armour* v. *Brazeau*, 191 Ill. 117, in discussing the duty of employers to use ordinary care and diligence in furnishing employees with safe appliances with which to work, said (p. 125): "There is a duty of the employer arising out of the liability of machinery or appliances to get out of order from time to time or to become unfit for use from wear or from age and decay, and this is the duty of inspection as meant by the law. While there is no absolute duty to keep appliances in safe condition, there is a duty to use reasonable care to keep them fit, and this duty may require inspection at reasonable intervals and the employment of such tests as will reveal the condition of the machinery or appliances. This duty of inspection rests upon the employer and not upon the employee, and depends upon the character of the machine or appliance, since ordinary care may require an inspection oftener in one case than in another." The evidence shows that this car having a defective coupling was put into appellee's train at Cypress that night, only a few miles from Tamms; that at Cypress appellant had a car inspector. The evidence also shows that it was not the duty of conductors to inspect cars and their appliances when they took on cars where inspectors were located.

We recognize the fact that railroad labor is full of danger to the employees, even with the exercise of the utmost skill and care; but this does not relieve the employer of the duty of using ordinary care and diligence in supplying and caring for its machinery.

The court cannot say as a matter of law, on this record, that appellee was familiar with the location of these semaphore wires or by ordinary prudence should have known of the danger resulting therefrom. As to whether the semaphore wires were properly constructed, guarded against and cared for, there was plainly a conflict of evidence. The

weight to be given to the witnesses' testimony on this subject, in the light of their experience and manner of testifying, is not for this court. All of these questions were properly submitted to the jury.

In view of what we have said heretofore on defective coupling appliances, it is unnecessary for us to discuss appellant's contention that the third instruction given on this subject was improperly given. Clearly from this record there was evidence justifying the court in giving such instruction, and as the Appellate Court well says, if there had been any doubt on this question the error would have been cured by instruction 12 given at appellant's request, covering substantially the same ground, and while it is true it is more general than appellee's instruction 3, still it plainly implies that there is evidence in the record tending to show that the coupling appliance was defective.

It is further urged that the court committed error as to evidence and instructions as to the various causes of negligence charged in the declaration and attempted to be proved, especially touching the joining together or combining of negligence as to the semaphore wires and as to the defective coupling appliances. If the injury resulted from the carelessness in constructing and protecting the semaphore wires or in constructing and caring for the coupling appliances, or both combined, then appellant is liable. We find no error in the record on this question. *Chicago City Railway Co.* v. *Young,* 62 Ill. 238; *North Chicago Street Railroad Co.* v. *Dudgeon,* 184 id. 477; *Same* v. *Same,* 83 Ill. App. 528; *Kraut* v. *Railway Co.* 160 Pa. St. 327; 1 Thompson on the Law of Negligence, secs. 69, 70.

Appellee's testimony fairly tends to uphold his contentions as set forth in the declaration, and as we find no error of law justifying a reversal, under the decisions heretofore cited the judgment of the Appellate Court upholding the verdict of the jury is binding on this court. That judgment will accordingly be affirmed.     *Judgment affirmed.*