(No. 14217.—Reversed and remanded.)
Rose Peters, Defendant in Error, *vs.* The Chicago Railways Company *et al.* Plaintiffs in Error.

*Opinion filed February 21, 1923—Rehearing denied April 4, 1923.*

1. Negligence—*Supreme Court cannot weigh the evidence—contributory negligence.* In actions for negligence the Supreme Court can pass only upon the question whether there is any evidence in the record which, with all its reasonable inferences, tends to support the plaintiff's cause of action, and where the question of contributory negligence has been decided in favor of the plaintiff by the trial and Appellate Courts that question is not open to review in the Supreme Court.

2. Same—*when judgment must be reversed for misconduct of plaintiff's counsel.* Misconduct of counsel for the plaintiff, who in spite of the admonition of the court persists in telling the jury that the defendant, by agreeing that an absent witness would, if present, testify to the facts stated in defendant's affidavit for a continuance, had admitted the truth of said testimony, will warrant reversal of a judgment for the plaintiff where the testimony recited in the affidavit is upon the most vital point in the case.

3. Same—*the persistent misconduct of counsel although ruled against may warrant reversal.* Persistent misconduct of counsel in argument is sufficient cause for reversing a judgment even in cases where the trial court has ruled against the propriety of such an argument, unless it can be seen that it did not result in injury to the defeated party.

Writ of Error to the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Joseph H. Fitch, Judge, presiding.

Charles LeRoy Brown, (John R. Guilliams, and Franklin B. Hussey, of counsel,) for plaintiffs in error.

John A. Bloomingston, for defendant in error.

Mr. Justice Duncan delivered the opinion of the court:

The Appellate Court for the First District affirmed a judgment of the superior court of Cook county in the sum of $4000 for personal injuries in favor of Rose Peters,

defendant in error, against the Chicago Railways Company *et al.,* plaintiffs in error. This court awarded a writ of *certiorari* for a review of the record.

Plaintiffs in error urge two grounds for the reversal of the judgment: First, defendant in error was guilty of contributory negligence as a matter of law; and second, counsel for the defendant in error was guilty of improper and prejudicial conduct in his argument to the jury.

Defendant in error was injured while alighting from a street car of the plaintiffs in error at Kenwood avenue and Fifty-fifth street, in Chicago. A heavy rain was falling at that time. The street car was shown by the evidence to be of a type having both the entrance and exit at the right front end of the car. The doors of the car are controlled by a lever, which, on opening them, lets down into a horizontal position the steps of the width of about eleven inches and of the length of about twenty-eight inches. It appears from the testimony of defendant in error that she was standing near the entrance of the car and signaled the motorman to stop. He did so and opened the door. Her testimony tends to show that the door was not open its full width and that the steps were not entirely down to a horizontal position. She testified that she saw the steps before she stepped on them and saw that they were not level; that they were tilted up from the door instead of being level; that they were not down by about two inches; that she saw that they were not down; that it was about four o'clock in the afternoon and was raining so hard she could "just see;" that when she stepped on the steps they were shaky and she slipped and fell over; that she put her right foot down on the steps and they did not settle down into place; that she knew that with the door pulled open the steps would be down to a horizontal position; that as she got off the car the door was open only wide enough to allow her to get through it, and that in doing so she brushed against the edge of the door; that as soon as she put the weight of

her body on the steps she slipped and fell; that she got out on the steps thinking that if the motorman had control of the car it was safe enough for her to step upon them; that she did not think anything else, and put her foot down on the steps because he opened the door in the way that he did. The car was standing still during the whole time of the occurrence.

It is defendant in error's claim that she was the first passenger to alight at that stop; that she stepped upon the tilted steps and that they shook and wavered, and that she slipped and fell off of them to the pavement. It is plaintiffs in error's claim that a number of other persons alighted from the car at that stop before she did; that she tripped and fell after she had completely and safely alighted upon the pavement; that the steps were fully lowered and the door completely opened before she alighted. The version of plaintiffs in error that the steps were fully lowered and were flat and level and the door completely opened and that defendant in error stepped down from the steps in complete safety and walked a few steps and slipped or tripped and fell was supported by the testimony of three persons who stood on the platform during that time. Two nurses who attended defendant in error testified that she told them at the hospital that her fall was caused by her foot catching in her dress when she was leaving the street car. Defendant in error contradicted the testimony of the nurses and was corroborated in her version of the accident by her husband, and also by what was alleged would be the testimony of an absent witness, Frank Rouke, set out in a motion for continuance by her, and which was admitted as his evidence by plaintiffs in error to avoid the necessity of a continuance.

If we accept the version of the transaction by the defendant in error as true, then, as contended by plaintiffs in error, she well knew the defective condition of the steps of the car at the time she alighted. This appears from her own testimony. If it also appeared that she understood or

appreciated the danger to which she was subjecting herself by stepping on the tilted steps in her attempt to alight from the car, and that such conclusion must be drawn as a matter of law, the defense of contributory negligence set up by plaintiffs in error would be complete. This question of fact has been settled adversely to the contention of plaintiffs in error by the Appellate Court and is not open for review in this court. We are not prepared to say that all reasonable minds would arrive at a different conclusion as to said fact from the one reached by the jury, which has been approved by the superior court and settled by the judgment of the Appellate Court in affirming the court's judgment. This court can only pass upon the question whether or not there is any evidence in the record which, with all its reasonable inferences, tends to support the cause of action. We cannot weigh the testimony in this class of cases. (*Chicago and Eastern Illinois Railroad Co.* v. *Snedaker,* 223 Ill. 395; *Chicago City Railway Co.* v. *Martensen,* 198 id. 511.) We do not intend to make any comment on the merits of the case when viewed by the evidence, and have only referred to the issues and the condition of the evidence bearing thereon to show how important it was in the trial of the case that no prejudicial misconduct of counsel for defendant in error in his argument to the jury should occur.

The testimony of the absent witness recited in the affidavit for continuance was, in substance, that on the day of the accident defendant in error was a passenger upon the car aforesaid, which stopped to let off passengers at Kenwood avenue and Fifty-fifth street at about five o'clock in the afternoon; that there was a rainfall at that time; that the door of the car was only partially opened by the company's employee, so that the steps of the car were not level; that in leaving the car she stepped from the top step to the lower step, which was not level, which caused her to slip and fall, breaking her hip; that the car had fully stopped and the door was only partially opened and was left in that

manner when defendant in error descended. When the affidavit was read, counsel for defendants said to the court, "I will admit that the witness would so testify if here, but I do not admit that the testimony is true." Plaintiff's counsel then remarked that in the affidavit it· is stated that the statements of the witness are true, to which the defendants' counsel replied that he did not admit that the statements are true but did admit that the witness would testify to the facts stated in the affidavit. On such admission the court ordered that the trial of the cause proceed.

In his argument to the jury counsel for plaintiff said: "The testimony of Rouke was true; they admitted it was true; he said it was true; he saw it." Defendants' counsel then said, "I never admitted it was true." Plaintiff's counsel, continuing the argument, replied: "You admit it was true, because if it was not true you would never have admitted the man would have so testified if he came here." On objection being made by defendants' counsel the court said: "There was no such admission; proceed." Notwithstanding the remarks of the court plaintiff's counsel continued with this further statement: "I say this: They say he would so testify if he were here, and coupled with the fact that this man's name was on the police report, he undoubtedly saw him; it raises the inference he did see him; and I say, gentlemen of the jury, that raises the inference the testimony would be true, or else I doubt they would admit, with knowledge of the fact he would say that, if he came here he would say that."

The trial judge did not at any time inform the jury that it was not legally inferable from the fact that plaintiffs in error admitted that Rouke would testify to the facts set up in the affidavit that his evidence was true, or that they admitted it was true, or that they believed it was the truth. The trial court at no time informed the jury what the law was in respect to such an admission, did not inform them that the argument was unsound or unfair, and did not in-

form the attorney that it must be stopped. Counsel was in no way reprimanded by the court but was allowed to proceed and persist in his unfair and untruthful statements after the court had informed him that there was no such admission. These false statements to the jury were at no time withdrawn or corrected by counsel. Not satisfied with his misconduct, in his further argument he insinuated to the jury that plaintiffs in error were taking an unfair advantage of an injured woman by forcing her into a trial after they had discovered that her witness was absent, and were thereby guilty of a fraud upon her. Even after being called down by the court for such remarks he persisted thereafter in the same vein in his argument. This appears from a transcript of what took place before the jury, in which counsel said: "Now, my distinguished brother in his foxy little way, after being so extremely diligent and persistent in getting me into this case after he knew my witness was away—" At this time defendants' counsel said, "I object to that." Plaintiff's counsel replied, "That is what you did; he is so innocent he conceals wings under his coat." The court sustained the objection of the defendants' counsel to these remarks and told the jury that they had nothing to do "with that," but plaintiff's counsel continued thereafter, saying, "The fact remains, gentlemen of the jury, just the same." Defendants' counsel having again objected, the court instructed the jury to disregard anything that counsel had said about being forced into the trial, and that that was a matter with which the jury had nothing to do. Thereafter, as a parting shot, the plaintiff's counsel said to the jury: "Mr. Rouke's name was on the police report and Mr. Rouke was available as a witness, and if they were willing to admit that if here he would so testify,—they knew just as well as I knew whether or not he would so testify,—and if it was not true that he would so testify they would not admit it, so that he cannot so cavalierly waive him out. It is a question of the testimony of this man

Rouke, and he cannot crawfish out of it after he has admitted it here and got me into the trial."

The conduct of defendant in error's counsel in his argument to the jury was very prejudicial to the rights of plaintiffs in error in the trial. It must be held that he well knew of its prejudicial effect and that he was misrepresenting to the jury the legal effect of the admission of counsel for plaintiffs in error in regard to Rouke's evidence, because the statute provides, in substance, that such an admission shall only be to the effect that if the absent witness were present he would testify as alleged in the affidavit for continuance, and that it will be left to the party admitting such affidavit to controvert the statements contained therein or to impeach the witness in the same manner as if such witness were present and so testified in open court. Rouke's testimony bore upon the most vital point in the case, and if the jury were led to believe that they must accept this evidence as the truth, or if they were led to believe that counsel for plaintiffs in error knew it was true, by the unfair methods and misconduct of defendant in error's attorney it was impossible for plaintiffs in error to secure a fair consideration of the evidence from the jury. We are warranted in assuming that the verdict of the jury was unfairly obtained by such misconduct.

It is the settled rule of this court that persistent misconduct of counsel is sufficient cause for reversing a judgment even in cases where the lower court has ruled against the propriety of such an argument, unless it can be seen that it did not result in injury to the defeated party. (*Appel* v. *Chicago City Railway Co.* 259 Ill. 561; *Eshelman* v. *Rawalt,* 298 id. 192.) We have had occasion heretofore to remind attorneys that it will not be possible for them to reap any benefit for their clients by such arguments. We dislike very much to have to reprimand counsel or to penalize their clients for their misconduct, but we shall not hesitate to do so where it appears probable that they have unfairly ob-

tained a verdict for their client by their misconduct.   The judgments of the Appellate Court and the superior court in this case are reversed solely upon that ground, and the cause will be remanded.

*Reversed and remanded.*