(No. 17329.—Judgment affirmed.)
ALVA COLLINS, Plaintiff in Error, vs. FRED KURTH et al. Defendants in Error.

Opinion filed June 16, 1926—Rehearing denied October 8, 1926.

NEGLIGENCE—*when Appellate Court may reverse judgment for plaintiff without remanding.* In an action for personal injuries the Appellate Court cannot make a finding of facts and reverse a judgment for the plaintiff without remanding the cause where there is any evidence tending to support the plaintiff's case as alleged in his declaration, but where the only negligence charged in the declaration is the failure of the defendants to warn and instruct the plaintiff in the use of the machine which injured him, and where the undisputed evidence shows that such failure, if any, was not the proximate cause of the injury, the Appellate Court is justified in making a finding of facts in accordance with such evidence and in reversing the plaintiff's judgment without remanding the cause.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kankakee county; the Hon. ARTHUR W. DE-SELM, Judge, presiding.

LUTHER B. BRATTON, and ARTHUR J. PRICE, for plaintiff in error.

E. P. HARNEY, A. L. GRANGER, and C. M. GRANGER, for defendants in error.

Mr. JUSTICE HEARD delivered the opinion of the court:

Alva Collins (hereinafter called plaintiff) brought an action of trespass on the case in the circuit court of Kankakee county against Fred Kurth, Arthur Pfingsten, George Thiesen and Herman Mussman (hereinafter called defendants) for the loss of his hand through injuries received in an ensilage cutter. The count of plaintiff's declaration upon which the trial was had averred that plaintiff was working about the ensilage cutter under defendants' orders and with their knowledge; that the work he was doing was outside the scope of his duties and employment; that he was inex-

perienced in the use of said machine; that the machine was dangerous; that he could not foresee the danger, nor was he warned or instructed as to it or in the use of the machine; that it was the duty of defendants to so warn and instruct him; that defendants were negligent in that behalf; that plaintiff, while in the exercise of due care and diligence, while working at said machine received the injuries for which this suit was brought. Defendants pleaded not guilty. A trial of the case resulted in a verdict in favor of plaintiff for $4250, and, a new trial having been granted, a second trial resulted in a verdict of $4650 in plaintiff's favor, upon which verdict judgment was rendered in his favor against defendants. From this judgment an appeal was taken to the Appellate Court for the Second District, which court reversed the case without remanding the same, making the following finding of facts: "We find that appellee was not inexperienced in the use of the machine in question; that he had actual knowledge of and could foresee the dangers inherent in said machine; that he had actual knowledge of the dangerous character of the machine and. of the existence and location of the knives which lacerated his hand, and that his injuries were not due to any failure on the part of appellants, or either of them, to warn and instruct appellee in the use of the machine or as to any latent danger therein. This judgment is reversed." The record is now before this court for review upon *certiorari*.

Defendants, neighboring farmers, were the owners of an ensilage cutter. The farmer for whom the ensilage was being cut furnished a tractor for motive power. Work had thus been going on for approximately two weeks when the outfit went to Kurth's farm to fill his silo, and it was at his place that plaintiff was injured. Plaintiff was forty-seven years of age and was employed by Kurth as a farmhand, at a wage of $30 per month. The ensilage cutter was admittedly of the latest type and was known as a "self-feeder." It was so called because it had a carrier upon which the corn-

stalks were thrown and moved toward and underneath a floating roller, which partially crushed the stalks and corn. The carrier then moved the stalks to a pair of stationary rollers, which further crushed them. After going through these rollers the stalks passed on to the cutter, consisting of a series of large knives, where they were shredded and put in condition to be placed in the silo. The carrier was in a trough six or seven feet long, eight or ten inches deep and about fourteen inches wide, the bottom of the trough being three and a half feet from the ground. The floating roller was about eighteen inches ahead of the knives. It weighed about twenty-five pounds and was about eight inches in diameter and twelve inches in length. This roller had six or eight little ribs on it, which helped to feed the machine. When in action it made twenty-five or thirty revolutions per minute. It was not covered but was in plain view of a person standing beside the carrier at all times. The stationary rollers and the knives were covered, the stationary rollers being about twelve inches from the floating roller. The stalks were brought to the machine in wagons and then thrown on the carrier. It was not always necessary for someone to assist the feeder, but if the stalks were rough or in such condition that they did not properly lie in the carrier it was necessary for someone to stand beside the carrier and straighten the stalks in it, or to stop the machine by use of a lever for that purpose. On the day of the accident the stalks were being so straightened. Kurth and plaintiff took turns in performing this work. During one of the times plaintiff was so employed his hand became caught in the machine and he received the injury for which this suit is brought.

Plaintiff testified that he had never done anything but ordinary farmwork and never had any experience in handling machinery except ordinary farm machines; that an ensilage cutter is not an ordinary farm machine such as farmers usually have; that at the time of the accident he

had had no experience at all in operating an ensilage cutter and knew nothing about it; that while he had been working with the outfit for eight or nine days he had not observed the machine in operation until the day in question; that he had worked either in the field or in the silo; that on the day of the accident he was told by Kurth to come out of the silo and feed the machine; that the manner of placing stalks on the carrier was for a wagon to drive alongside the carrier and the man in charge of the wagon would throw the stalks from the wagon upon the carrier; that the stalks were usually in bundles of various sizes; that the bundles were thrown over the head of the man at the feeder and onto the carrier, where the stalks were straightened out by him. This evidence tended to show that plaintiff was inexperienced in the use of the machine and that under the circumstances it was the duty of his employer to instruct him in its use and warn him as to the dangers incident to such use. It was therefore error for the Appellate Court to reverse the case with a finding of facts, without remanding it, if there was any evidence in the record showing or tending to show that such failure on the part of defendants proximately contributed to bring about the accident. *Mirich* v. *Forschner Contracting Co.* 312 Ill. 343; *Sinopoli* v. *Chicago Railways Co.* 316 id. 609; *Myers* v. *Northwestern Elevated Railroad Co.* 318 id. 24.

The undisputed evidence shows that in feeding the machine plaintiff stood alongside the trough, about two feet from the floating roller, which was between him and the knives; that in doing the work it was necessary for him to face toward the trough; that the carrier in the trough, the cornstalks and the floating roller were in plain sight; that within his reach there was a lever for stopping the machine, which he had seen used; that he knew the object of placing the cornstalks in the trough and that they were being conducted through the rollers to the knives and there shredded; that he knew the location of the stationary roll-

ers and the location of the knives; that at different times prior thereto he had assisted Kurth in removing the knives from the machine, sharpening them and replacing them. He testified that while engaged in feeding the machine he was standing between the trough and the wagon; that a fellow was pitching bundles over his head; that something hit and staggered him; that he did not know what hit him; that it seemed to be some bundles of stalks of corn off the wagon; that it didn't knock him senseless; that he threw up his hand to catch hold to protect himself; that he got his hand caught in the knives of the cutter. No other witness testified upon the subject of the cause of the accident. There was no count in the declaration alleging negligence on the part of defendants in failing to provide a safe place for plaintiff to work, the only negligence alleged being their failure to warn plaintiff. In this state of the record it was necessary that plaintiff should prove, by a preponderance of the evidence, that defendants' negligence in failing to warn him proximately contributed to bring about the accident. From the evidence in the case it is manifest that such failure to warn was not the proximate cause of the accident and in no manner contributed to it, but the cause of the accident was the blow received by plaintiff and his involuntary throwing up of his hand to protect himself, neither of which was in any way connected with or depended upon defendants' failure to warn plaintiff of the danger. The circuit court therefore should have sustained the motion to instruct the jury to find defendants not guilty, and in this state of the record the Appellate Court was justified in its finding of fact "that his injuries were not due to any failure on the part of appellants, or either of them, to warn and instruct appellee in the use of the machine or as to any latent danger therein."

The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*