Lillie E. Goodman, Administratrix with the Will Annexed of the Estate of Frederick R. Goodman, Deceased, Appellee, v. Chicago & Eastern Illinois Railway Company, Appellant.

Gen. No. 32,286.

Opinion filed February 27, 1928,

EDWARD W. RAWLINS, for appellant; H. T. DICK, of counsel.

JAMES C. McSHANE, for appellee.

MR. JUSTICE McSURELY delivered the opinion of the court.

January 12, 1926, Frederick R. Goodman, married, about 50 years of age, while driving his automobile across the railroad tracks of the defendant, was struck by a passenger train and killed. The administratrix brought suit and upon trial had a verdict for $6,500. From the judgment thereon, defendant appeals. For convenience, Goodman hereafter will be called plaintiff.

The declaration charged in three counts, respectively, that defendant owned and operated the railroad in question and that it negligently failed to provide and maintain a flagman at the railroad crossing at the time of the accident and failed to furnish a certain automatic bell and signal lights, and, generally, the negligent and improper operation of the train, thereby striking plaintiff and causing his death.

The accident happened in the village of Glenwood, Cook county, Illinois, where Main street, running easterly and westerly, crosses the tracks of the defendant which run northerly and southerly. Plaintiff was driving west and the train was coming from the south. No automatic bell or gates have ever been maintained at this crossing. A flagman is kept there from seven o'clock in the morning until five o'clock in the evening, but no flagman has ever been kept there after five o'clock. The crossing is at grade, and there is a large cross-arm railroad crossing sign. The depot is north of Main street and east of the tracks. About 143 feet farther east, on the north side of Main street, is a store building. The nearest building to the crossing on the other side of the street is a dwelling approximately 110 feet south of Main street and 100 feet east

of the most easterly rail. There is a street light just south of Main street, east of the track, about 70 feet east of the most easterly rail, and 200 feet farther south and east of the tracks is another street light, which is approximately 48 feet east of the most easterly rail. Immediately east of and parallel to the tracks is a road running north and south. Both of these street lights are east of this road. There is a watchman's shanty about 6 by 5 feet in dimension, standing approximately 35 feet south of the center of Main street and 9 feet east of the track. Except for these street lights and this shanty, there is an entirely unobstructed view from a point, at least, 100 feet east of the tracks southward along the tracks down to a whistling post which is approximately 1,700 feet south of the crossing. For 1,000 feet south of the crossing, the tracks are straight and then they begin to curve slightly to the southwest.

The accident happened shortly before six o'clock in the evening, at which time it was dark. There was a light snow falling. Two witnesses describe this snow as "wet." It was a cold night around zero, which would seem to negative the testimony that the snow was wet. All agree it was just an "average snow." Photographs of the location taken the morning after the accident indicate a light snowfall, in some places not sufficient to cover the ground.

Plaintiff lived at Homewood, Illinois, which is about three miles west of Glenwood. He was employed at East Chicago, Indiana. Lloyd Hemingway, who lived in Glenwood, was also employed in the same place and for some time prior to the accident he and plaintiff had been going to and from their work together in an automobile. Hemingway lived on the south side of Main street, about a block east of the railroad crossing. In the morning he would drive westerly over the crossing, go to Homewood, pick up plaintiff and proceed to their place of work. At night they would go

home by the same way. For the two days before the accident they went to work in plaintiff's car, following the same route. Plaintiff would come to Glenwood, cross the tracks on Main street, go eastward to Hemingway's home, and then retrace their route, going westward across the tracks to East Chicago. This route would be reversed in the evening. On these occasions there was no flagman at the crossing.

Upon the evening of the accident, after crossing the tracks and going eastward on Main street with Hemingway, and after having left him at his home, plaintiff immediately turned around and started back west over the crossing when he was struck by defendant's northbound train. The crossing was well lighted. The headlight on the engine was burning and the whistle was blown. The automatic bell on the engine was ringing.

One witness testified that he crossed the tracks shortly before the accident; that as he came to the crossing, he brought his automobile to a stop and heard the train whistle to the south. He continued on across the tracks and went into the store and just as he got inside heard the crash of the accident.

Another witness testified that she crossed the tracks on the south side of Main street going east shortly before the accident and that as she approached the tracks she heard the whistle and saw the train coming when it was down at the curve; that she could see the headlight plainly; that after she crossed the tracks, she went to her home in the store building when she heard the noise of the accident.

Robert Krause was an eyewitness. He had come west along the south side of the street and had started across to the store to deliver milk. He was then about 150 feet east of the crossing when plaintiff passed him in his automobile going west. Krause heard the train whistle and stopped, turned and watched both the automobile and the train. When plaintiff got about 30 feet

from the train, he slowed down to about 7 miles an hour and continued at that speed until he had almost reached the tracks, when he speeded up to about 9 or 10 miles an hour and ran in front of the train and was struck. When the witness first saw the train, it was between 200 and 250 feet south of the crossing and he heard the whistle and saw the headlight.

Plaintiff was driving a touring car with a windshield in front and glass windows on the side, so that the driver could look out on either side and in front. The speed of the train was estimated by some witnesses at 50 or 60 miles an hour. The engineer testified that he was running at the rate of 40 miles an hour. Both engineer and fireman testified that the automatic bell on the engine was ringing, the headlight burning and that, as they got to the whistling post, the road-crossing whistle was sounded.

There was evidence as to the railroad traffic and also the street traffic at this point. There were about 18 passenger trains a day and 2 or 3 freight trains per hour. The volume of vehicular traffic passing over the crossing was estimated at about 4 motor vehicles every 5 minutes, and this traffic was heavier between five and seven o'clock in the evening because of the factory employees going home.

Did the evidence warrant the jury in finding the defendant guilty of negligence as charged and that such negligence proximately caused plaintiff's death? Plaintiff's counsel argues that the duty to maintain a flagman or signal bell at the crossing was imposed by the Public Utilities Act, chapter 111a, sections 32 and 73, Cahill's St. ch. 111a, ¶¶ 47 and 92. We are not disposed to accept this argument, but are inclined to hold that, so long as the commerce commission had not ordered any flagman or signal bell to be installed and maintained at the crossing, it was a question for the jury to determine in this particular case whether the omission to supply the same was negligence. Without

discussing this question further, we may concede that the questions of whether defendant was negligent as charged and whether such negligence was the proximate cause of plaintiff's death were properly left to the determination of the jury.

A more serious question confronts us, however, as to whether the evidence warranted the jury in finding that plaintiff was in the exercise of ordinary care for his safety and whether he was guilty of negligence which contributed to the accident. From the foregoing statement of facts, it cannot reasonably be controverted that plaintiff continuously for, at least, the space of 100 feet along Main street east of the track had a clear and unobstructed view for such a distance south along the track that the slightest look in that direction would have revealed the approaching train in time for him to have avoided the accident. Neither the watchman's small shanty nor the street lamp posts could hide the approaching train. The crossing whistle was heard by others nearby and the headlight on the engine was seen by them, and there was nothing to prevent plaintiff from hearing and seeing the same.

An argument is predicated upon the rule that a presumption of due care must be drawn from the natural instinct of self-preservation. Such a presumption can only obtain where there is no eyewitness to the accident, but where, as here, there is an eyewitness who saw the accident, evidence as to the habits of the plaintiff as to care and prudence was inadmissible and there can be no presumption of due care on his part. The witness Krause was an eyewitness and watched plaintiff's automobile, seemingly anticipating that, unless he altered his progress, he would be struck by the train. *Petro v. Hines,* 299 Ill. 236; *Ingle v. Maloney,* 234 Ill. App. 151; *Anderson v. Chicago, R. I & P. Ry. Co.,* 243 Ill. App. 337.

The argument that plaintiff might have inferred from the presence of the watchman's shanty that de-

fendant maintained a flagman who would give the danger signal when a train was approaching is without merit. Plaintiff knew from previous experience that there was no flagman at the crossing at this time. Furthermore, he would not be relieved from the duty to exercise due care because of a presumption that a flagman would give a signal, especially when the presence of the flagman himself is based upon a presumption. As was said in *Schlauder v. Chicago & Southern Traction Co.*, 253 Ill. 154: "One who has an unobstructed view of an approaching train would not be justified in closing his eyes and crossing a railroad track in reliance upon the presumption that a bell would be rung or a whistle sounded. No one can assume that there will not be violations of the law or negligence of others and offer the presumption as an excuse of failure to exercise care. * * *" See also *Jaroszewski v. Chicago Rys. Co.*, 241 Ill. App. 1; *Specht v. Chicago City Ry. Co.*, 233 Ill. App. 384; *Chicago, M. & St. P. Ry. Co. v. Bennett*, 181 Fed. 799.

The presence of the snow is advanced as explaining the failure of the plaintiff to apprehend the approaching train. A driver of a motor vehicle is bound in using the highway to notice the conditions and observe the surroundings occasioned by climatic incidents. If the snow interfered at all with plaintiff's vision, ordinary care and precaution in approaching a dangerous crossing would demand an increased degree of care, even to the extent of stopping his automobile. There is abundance in the record, however, to justify the conclusion that the snow was not sufficient to prevent plaintiff from seeing the train.

Similar cases have been frequently before our courts. In *Burns v. Chicago & A. R. Co.*, 223 Ill. App. 439, there is a list of cases in which it has been held under similar circumstances that the accident was caused through the contributory negligence of the plaintiff.

In *Graham v. Hagmann*, 270 Ill. 252, there is a comprehensive statement relating to such accidents:

"Railroads are engaged in the performance of a business of a *quasi* public nature, and in carrying out the purposes for which they are created must necessarily often operate their trains at such a high rate of speed that they cannot be brought to a sudden stop without endangering the lives and safety of those riding therein. They travel on fixed tracks and cannot turn aside, and the danger to be encountered in entering thereon is so well known and is a matter of such common knowledge, that when a traveler on a public highway fails to use the ordinary precautions before driving thereon, the general knowledge and experience of mankind condemn such conduct as negligence."

Many other like cases might be cited. Following these cases, we are of the opinion that the jury was not justified in finding that plaintiff was free from contributory negligence directly causing the accident, and that in this view of the case the judgment should be reversed and the cause remanded.

However, a more decisive question is presented. At the close of plaintiff's evidence and again at the close of all the evidence, the defendant moved the court to instruct the jury to find the defendant not guilty, which motions were denied and the tendered instructions refused, thus presenting the question for our determination whether it can be said, as a matter of law, that plaintiff was guilty of contributory negligence. While the courts of this State have usually left the question of due care on the part of a plaintiff to the determination of the jury as a question of fact, yet there are many decisions in this and other jurisdictions holding that, as a matter of law, plaintiff under similar circumstances cannot recover. *Lake Shore & M. S. R. Co. v. Hart*, 87 Ill. 529. The most recent decision dealing with like circumstances is *Baltimore & O. R. Co. v.*

*Goodman,* — U. S. —, 72 L. Ed. —, 48 Sup. Ct. 24, by Mr. Justice Holmes, in which the court said:

"When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train not the train stop for him. In such circumstances it seems to us that if a driver cannot be sure otherwise whether a train is dangerously near he must stop and get out of his vehicle, although obviously he will not often be required to do more than to stop and look. It seems to us that if he relies upon not hearing the train or any signal and takes no further precaution he does so at his own risk. If at the last moment Goodman found himself in an emergency it was his own fault that he did not reduce his speed earlier or come to a stop. It is true as said in *Flannelly v. Delaware & Hudson Co.,* 225 U. S. 597, 603, 32 S. Ct. 783, 56 L. Ed. 1221, 44 L. R. A. (N. S.) 154, that the question of due care very generally is left to the jury. But we are dealing with a standard of conduct, and when the standard is clear it should be laid down once for all by the Courts. See *Southern Pacific Co. v. Berkshire,* 254 U. S. 415, 417, 419, 41 S. Ct. 162, 65 L. Ed. 335."

This principle has been accepted and followed in *Davis v. Pere Marquette Ry. Co.,* 241 Mich. 166, 216 N. W. 424, where the court said:

"Plaintiff was guilty of contributory negligence as a matter of law. There is a standard of conduct, based on the rule of reasonable care, to which all drivers of motor vehicles must conform or bear the consequences."

This was also followed in *Kutchma v. Atchison, T. & S. F. Ry. Co.,* 23 Fed. (2d) 183. Peculiarly pertinent to the instant case is the language in this opinion: "To listen only when one cannot hear an approaching train because other noises obstruct the sense of hearing, and to look only where the view of the approaching

train is obstructed, is as careless and neglectful of duty as to not listen or look at all." In *New York Cent. & H. R. R. Co. v. Maidment,* 168 Fed. 21, is an illuminating discussion of the new questions as to reciprocal rights and duties arising out of the use of the automobile with reference to grade crossings of railroads. The opinion notes the difference between the difficulties of controlling horses at grade crossings, on the one hand, and the absolute control of the driver of an automobile over his machine, on the other. The opinion concludes:

"It will thus be seen an automobile driver has the opportunity, if the situation is one of uncertainty, to settle that uncertainty on the side of safety, with less inconvenience, no danger, and more surely than the driver of a horse. Such being the case, the law, both from the standpoint of his own safety and the menace his machine is to the safety of others, should, in meeting these new conditions, rigidly hold the automobile driver to such reasonable care and precaution as go to his own safety and that of the traveling public. If the law demands such care, and those crossing make such care, and not chance, their protection, the possibilities of automobile crossing accidents will be minimized."

The foregoing considerations seem to us convincing and we therefore hold that plaintiff was guilty of negligence directly contributing to his death, as a matter of law, and that the trial court should have directed a verdict for the defendant. For this reason the judgment will be reversed without remanding. *Collins v. Kurth,* 322 Ill. 250.

*Reversed.*

MATCHETT, P. J., concurs.

Finding of fact: We find, as a matter of law, that the plaintiff was guilty of negligence directly contributing to his death and that the trial court should have

directed a verdict for the defendant because the evidence did not tend to establish a cause of action.

MR. JUSTICE O'CONNOR specially concurring: I agree with the conclusion reached by the majority of the court, but not in all that is said in the opinion. It is our duty to follow the law as announced by the Supreme Court of this State, although it is at variance with the law as stated in opinions of the United States Supreme Court. In my opinion, the rule laid down in the case of *Baltimore & O. R. Co. v. Goodman,* — U. S. —, 72 L. Ed. —, 48 Sup. Ct. 24, and cited with approval in majority opinion, went too far and is not in accord with the law of this State. Mr. Justice Holmes in the *Goodman* case says: ''When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train not the train stop for him.'' This is a self-evident fact and so far as we are advised the contrary has never been contended. But the alleged negligence in this case, as appears from the opinion of the Circuit Court of Appeals, 10 Fed. (2d) 58, was the failure of the railroad company to maintain adequate signals at the crossing and not that the train should have stopped for the automobile to pass. As I understand it, the rule laid down in the *Goodman* case will bar a recovery in every case, as a matter of law, where the contributory negligence of the injured or the deceased person is a defense, and that it makes no difference how much the approaching train is obscured from view, nor the fact that the railroad company maintained no flagman or signals. The law as laid down in *Flannelly v. Delaware & Hudson Co.,* 225 U. S. 597, is in accord with the law of Illinois.