**Willard L. Lauer, Administrator of Estate of Ella L. Lauer, Deceased, Appellee, v. Elgin, Joliet and Eastern Railway Company, Appellant.**

**Gen. No. 40,919.**

Heard in the first division of this court for the first district at the October term, 1939. Opinion filed May 20, 1940.

KNAPP, ALLEN & CUSHING, of Chicago, for appellant; JOSEPH L. EARLYWINE, HARLAN L. HACKBERT and R. NEWTON ROOKS, all of Chicago, of counsel.

KROHN & MACDONALD and CHARLES J. MUELLER, all of Chicago, for appellee; STUART B. KROHN and IAN P. MACDONALD, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

In an action under the statute by the administrator for alleged negligence resulting in the death of Ella L. Lauer, on trial by jury, there was a verdict of guilty with damages assessed at $4,000, upon which the court

overruling motions for a new trial and for judgment *non obstante veredicto* entered final judgment for plaintiff, from which defendant appeals.

It is urged for reversal that defendant was not guilty of wilful and wanton misconduct as charged in the complaint, and was not negligent; that deceased was guilty of contributory negligence barring recovery, and that the verdict is excessive.

The evidence tends to show that November 20, 1937, Willard L. Lauer with his wife Ella L. Lauer, who lived in Chicago Heights in Cook county, while riding south in an Oldsmobile automobile on Euclid avenue, a public highway running in a north and south direction, and at a place where the avenue is intersected by defendant's railway, running east and west, were struck by a train of defendant's cars and received injuries from which both were immediately rendered unconscious and shortly afterward died. This suit was brought by the administrator of Mrs. Lauer. The administrator of Mr. Lauer brought a similar suit and recovered a judgment for $7,500, from which an appeal *Lauer v. Elgin, J. & E. Ry. Co.,* 305 Ill. App. 487 (Abst.) is now pending in this court, in which we today filed an opinion.

Mrs. Lauer at the time of her death was 44 years of age. She and her husband had one son, Willard, who survives and is the administrator. The accident in which these two lost their lives occurred November 20, 1937, at about 8:00 p.m. They were riding in an Oldsmobile automobile, which Mr. Lauer was driving. Euclid avenue was paved. It was crossed at right angles by defendant's right of way on which there are six tracks 71 feet wide from the northernmost to the southernmost rail. Pictures are in evidence showing the situation at the crossing at the time of the accident. On the west side of the street, 6 feet north of the northernmost track and 23 feet to the west of the west line of the avenue, was a small shanty used by a flagman. Fifty feet to the west

of this was a small latrine building. Thirteen feet north of the northerly track and 5 feet west of the street was a crossarm bearing the words "Railway Crossing." About 150 feet north of the track was a round sign bearing the letters "R. R." Thirteen feet north of the crossing and 5 feet east of the highway was a street light. This was the only light within 200 feet of the crossing. Euclid avenue was designated as a through street by the proper authorities. Stop signs were posted at every intersecting street. There was no light of any kind on the crossing or on the west side of the street. The pavement of Euclid avenue was 24 feet wide at this place. The trains of defendant ran over the two inner tracks. The outside tracks were used for storage purposes. West of the flagman's shanty was a stone and wire fence. There was evidence from which the jury might believe that on the night of the accident a train of railroad cars was standing on the north track to the west of the crossing. If this was true, these would tend to obscure the vision of travelers approaching from the north. The flagman was not on duty at this time. There was no wigwag or moving signal of any kind maintained by defendant at the crossing. There was no light in the crossarms and no light on the crossing at all so far as the railroad was concerned. The only artificial light was the one already described on the east side of the avenue. There had been snow in the morning and the pavement was slippery.

Herndon, the rear brakeman, who was the only occurrence witness and who was called to testify by both plaintiff and defendant, said the moon was shining, but other evidence indicated it was dark at the time. Herndon had been employed by defendant for about 22 years. The crew in charge of defendant's train consisted of Herndon, another brakeman, a conductor, an engineer and a fireman. The train consisted of about eight cars which had been picked up at Joliet. The car

farthest to the east in the train was a gondola car, and the engine was pushing this and the seven other cars east across the intersection. Herndon says he was sitting on the southeast corner of the gondola car, which he thinks was empty. He had an electric lantern such as he used in giving signals to the engineer and others of the crew. There was no other light on the gondola. He was on the top, about 10 or 12 feet from the ground. The engine which was pushing the train of cars had electric headlights in front and also an electric headlight on the rear. It was a road type of engine. The crew had run around other cars right west of the crossing so as to get these particular cars ahead of them and deliver the same to the C. & E. I., which was about three-quarters of a mile east of where the accident happened. There was a box car in the train which was higher than the gondola. The other brakeman on the train rode on the car just behind the gondola. These cars were from 40 to 50 feet in length, so the front end of the engine which was pushing from the rear was about 400 feet from where Herndon was riding. The train was moving on the fourth track from the north. Herndon says that it was moving about 8 or 10 miles an hour. He first saw the automobile coming south at a speed of about 25 miles an hour when the front end of his train was about 150 feet west from the crossing. The automobile, he says, was then 300 to 400 feet to the north. The headlights of the automobile were lighted. He says the whistle of the train was blowing. He heard the whistle and saw the automobile practically at the same time. When about 50 to 75 feet from the crossing he swung his lantern out across it as far as he could reach out from the car, leaning forward. He swung it east and west in the same direction the train was going. He did not get down from the car onto the ground, and no one was on the ground signaling. The lantern was an electric with two bulbs. It was produced in this court on oral argument. Each

bulb is about one-quarter of an inch in diameter. Only one of these was lighted. When the train was about 12 feet from the crossing he gave the first signal to the engineer. The automobile did not stop. He felt the engineer apply the air brakes and the train stopped about 120 to 130 feet from the point at which he gave the signal. The drawbar or coupling of the gondola car hit the automobile right in the center and carried it over the crossing. The occupants were rendered unconscious and died shortly thereafter.

Defendant argues in the first place that there was no evidence to sustain the charge of wilful and wanton misconduct as stated in the complaint. There was no motion, however, by defendant for a ruling in its favor on this particular charge. Two instructions for plaintiff (Nos. 3 and 9) and one (No. 8) were given at the request of defendant that no recovery could be had unless deceased was in the exercise of due care for her own safety. These instructions eliminated the wilful and wanton charge, and no instruction was given on the wilful and wanton theory.

Defendant again contends that there was no evidence tending to prove the negligence of defendant with reference to the maintenance of the crossing. It points out that there was no statutory duty to keep a flagman at the crossing or to adopt and use mechanical devices often used to warn travelers of such dangers, citing *Opp v. Pryor*, 294 Ill. 538; *Willett v. Baltimore & Ohio Southwestern R. Co.*, 284 Ill. App. 307, 310; *Goodman v. Chicago & Eastern Illinois Ry. Co.*, 248 Ill. App. 128. It is argued that there were no unusual duties in this respect in the absence of a statute or order of the public utility commission. The law as applied in the cases is well stated in *Opp. v. Pryor*, 294 Ill. 538: "There was therefore no statutory duty to maintain a watchman or gates at the crossing, and neither by custom nor judicial decision has it ever been held that it is the general duty of railroad companies to maintain watchmen or

gates at public crossings. There is a common law duty to exercise such care and use such precautions as will enable the traveler on the highway, if he exercises ordinary care, to ascertain in the night time the approach of an engine backing cars over a street crossing. There may be special conditions creating special dangers that might require a watchman or gates at a street crossing, as in the case of such crossing in a populous city in constant use by the public, but there was neither allegation nor proof of any such condition at this crossing in a residence neighborhood, so that no cause of action was proved under the third count.''

The complaint here did allege an unusual situation and duties growing out of these. We have described the situation that existed at the crossing. Apparently it was such that the railroad recognized the duty of keeping a flagman there in the daytime for the purpose of warning travelers. Whether a flagman should not have been kept there at least during a part of the night was under all the circumstances a question for the jury. We think the jury could reasonably find that there were special dangers here and special conditions. The fact that this was a through street and that the tracks were six in number (some of them used for storage purposes) tended very much to increase the danger to travelers. These unusual facts distinguish this case from all the others cited and made it a question for the jury to decide as to the precautions necessary in the exercise of due care. The precautions should, of course, be commensurate with the dangers and the risks.

We think, too, it was a question for the jury whether the particular operations of the train were negligent under all the circumstances.

The controlling question in the case, as it seems to us, is whether the jury could reasonably find that Mrs. Lauer before and at the time of the accident was in the exercise of due care. The evidence shows Mr. Lauer

was driving the automobile and that Mrs. Lauer was riding on the right-hand side as they approached the crossing. This was the side from which the train approached. The Lauer family had lived in the vicinity of the crossing for 14 or 15 years. Defendant says there is no evidence that she looked or listened or said anything for her own protection, and that finally when the automobile reached the north rail of the north track, if she were using her powers of observation, she must have known she was upon a railroad crossing, when the train of cars was about 40 feet ahead of the automobile and only 10 or 12 feet to the right of the highway (the side on which Mrs. Lauer was riding), and when Herndon was signaling first to the automobile and then to the engineer, there is an entire absence of evidence that she endeavored by word or deed to avoid the accident. Defendant calls attention to the duty of a passenger under such circumstances, as stated in *Opp v. Pryor,* 294 Ill. 538; *Morgan v. Rockford, B. & J. Ry. Co.,* 251 Ill. App. 127; *Goodman v. Chicago & Eastern Illinois Ry. Co.,* 248 Ill. App. 128. Defendant also calls attention to two recent decisions of the Illinois Supreme Court, *Greenwald v. Baltimore & Ohio R. Co.,* 332 Ill. 627; *Provenzano v. Illinois Cent. R. Co.,* 357 Ill. 192, which are said to point to the same conclusion as these other cases. Defendant points out that since there was an eyewitness to the accident (Herndon) there can be no presumption that Mrs. Lauer was exercising due care. On this point it again cites *Goodman v. Chicago & Eastern Illinois Ry. Co.,* 248 Ill. App. 128, 134. The rule that the inference of due care may be drawn from the natural instinct of self-preservation is not to be applied where there is an eyewitness to the accident, like all other rules of law is subject to reasonable limitations. Herndon saw the accident, but considering all the circumstances he was not in a position to know whether Mrs. Lauer saw the danger or gave warning to her husband of it. The husband's

negligence, if any, could not be imputed to Mrs. Lauer. *Thompson v. Atchison, T. & S. F. Ry. Co.,* 258 Ill. App. 123; *Nonn v. Chicago City Ry. Co.,* 232 Ill. 378.

The jury under all the circumstances had a right to assume that the Lauers were not bent on self-destruction or that they wished to be struck and killed by the approaching train. While the language of the cases may not always be consistent, the general rule seems to be that the question of contributory negligence is for the jury except when the evidence of the existence of that negligence is so clear that reasonable minds could not come to a contrary conclusion. *Lannon v. City of Chicago,* 159 Ill. App. 595. In *Lundquist v. Chicago Rys. Co.,* 305 Ill. 106, our Supreme Court said (p. 112): "It is only where all reasonable minds agree that a certain state of facts is established that the question can be raised as to whether or not those facts constitute negligence as a matter of law. If reasonable minds differ on what the facts are, the question of negligence is a question of fact for the jury under the instruction of the court as to the law."

In *Peters v. Chicago Rys. Co.,* 307 Ill. 202, the Supreme Court said (p. 205): "This court can only pass upon the question whether or not there is any evidence in the record which, with all its reasonable inferences, tends to support the cause of action. We cannot weigh the testimony in this class of cases. (*Chicago and Eastern Illinois Railroad Co. v. Snedaker,* 223 Ill. 395; *Chicago City Railway Co. v. Martensen,* 198 id. 511.)"

There is a wealth of authority to the effect that this rule is applicable to contributory negligence. *Taylor v. Alton & Eastern R. Co.,* 258 Ill. App. 293; *Henry v. Cleveland, C., C. & St. L. Ry. Co.,* 236 Ill. 219; *Elgin, J. & E. R. Co. v Lawlor,* 229 Ill. 621; *Chicago & Eastern Illinois Ry. Co. v. Beaver,* 199 Ill. 34; *Coulter v. Illinois Cent. R. Co.,* 264 Ill. 414; *Oswald v. Grand Trunk Western Ry. Co.,* 283 Ill. App. 86. We hold that the jury could reasonably find Mrs. Lauer, at the time of and

before the accident, was in the exercise of due care.

It is urged the damages are excessive. The record does not sustain this contention. There was some evidence of definite pecuniary loss, and Mrs. Lauer was survived by her son, who is the administrator. The law presumes pecuniary loss to a son whose mother has lost her life under circumstances such as are shown here. *Dukeman v. Cleveland, C., C. & St. L. R. Co.,* 237 Ill. 104; *Wilcox v. Bierd,* 330 Ill. 571. We find no reversible error in the record and the judgment will be affirmed.

*Judgment affirmed.*

O'Connor and McSurely, JJ., concur.