Anna F. Thompson, Appellee, v. The Atchison, Topeka & Santa Fé Railway Company, Appellant.

Gen. No. 8,106.

October term, 1929. Heard in this court at the Opinion filed April 5, 1930. Rehearing denied June 24, 1930.

EMMET TRAINOR, ALBERT T. BELSHÉ and THOMAS F. KING, for appellant; LAWRENCE, NELSON & STUART, of counsel.

MARSH, LEWIS & THOMPSON, for appellee.

MR. JUSTICE JETT delivered the opinion of the court.

Anna F. Thompson, appellee, brought suit in trespass on the case against the Atchison, Topeka and Santa Fé Railway Company, to recover damages for injuries alleged to have been sustained on November 23, 1927, at Galesburg, Illinois, by reason of the negligence of appellant.

The declaration consists of three counts. The first count avers that the appellant was operating a railroad in an easterly and westerly direction, through the City of Galesburg, across North Kellogg Street, and was operating certain gates on the north and south sides of said railroad at said Kellogg Street, to prevent persons passing along Kellogg Street, in either a northerly or southerly direction when the train was about to pass over said street; that while appellee, being a passenger in an automobile driven by her husband, was proceeding south on said Kellogg Street towards said crossing, and while the train of the appellant was approaching said crossing from the west, appellant, through its agents and servants, failed to give any signal of the approach of said train, or that said appellant, through its said servants and agents was about to lower the gates across said Kellogg Street, and that appellee, while a passenger in her husband's car, and while approaching said crossing at the place aforesaid, and while in the exercise of due and proper care for her own safety, passed upon said tracks, and after appellee had passed upon said tracks, said gates, without any warning were lowered, and the car in which appellee was riding as a passenger came in contact with one of said gates; and while then and there a train was approaching from the west, and about to collide with the automobile in which appellee was a passenger, appellee alighted from said automobile and started away from the tracks of appellant towards the gate, which was in contact with said automobile, and that said gate when released in some way from said automobile, struck violently against appellee and struck her to the ground, and greatly injured appellee, and her hip was broken and the bones of her body broken and the muscles and ligaments of her legs and body greatly and permanently injured.

The second and third counts aver, in substance that the appellant was operating a railroad through the City of Galesburg, and that at the street crossing on North Kellogg Street, the railroad company maintained and operated crossing gates; that appellee was riding in an automobile with her husband, approaching said crossing from the north; that the north gates were open and the automobile was driven across the tracks, and after having crossed under them, the gates on the south side of the track were lowered and rested on the radiator cap of the automobile; that the automobile was stopped in close proximity to the railroad tracks; that no warning signal of the lowering of the gates was given; that a train was approaching; that appellee was in fear of being struck by the approaching train and jumped out of the automobile, and while in an endeavor to crawl under the gates, one of the arms which was resting on the radiator cap fell and struck her; that as the result of such striking, she was thrown to the ground or pavement, and received the injuries of which she complains.

To the declaration appellant pleaded the general issue. A jury trial was had resulting in a finding in favor of appellee in the sum of $2,999 on which judgment was entered, and this appeal followed. The evidence on the part of appellee tends to show that on the evening of November 23, 1927, she left her home at about 8:30 o'clock; the weather was damp and the pavement wet; she was riding in an automobile with her husband; she was riding in the rear seat; after they passed down Kellogg Street towards the south, and after riding six or seven blocks on said street she came to the crossing in question, which was located about halfway between her home and the business part of the city; she passed on to the crossing on the right-hand side of the street; there was a gong or bell located at the crossing and ordinarily operated by the gateman for the purpose of warning passersby in case the

crossing gates were about to be lowered. As appellee approached the crossing, no gong or bell was sounded or other signal or warning of any kind given that the gates were about to be lowered or that a train was approaching. Prairie Street runs north and south a block west of Kellogg Street, and as appellee approached Kellogg Street crossing, on said Kellogg Street, in her husband's car, she observed an engine and train of cars standing still between Kellogg and Prairie Streets, which was to her right. As the automobile approached the crossing the gates were not down but were up and in their natural position. As she drove across the tracks and approached the south gate the train started towards her, and the south gate was suddenly dropped onto the front end of the automobile in which appellee was riding and caught the radiator cap, and the gate was thrown some six feet. Appellee stepped out of the automobile and as she did so she saw the train coming towards her from the west, with the headlights burning; she was then near the tracks upon which the train was approaching, and the automobile from which she alighted was near enough to the track to be struck by the train. In order to free herself from danger she took the most direct course and proceeded to the south alongside of the automobile in which she had been riding intending to go under the gates, and as she approached the gate, the gate slipped over the radiator cap and back over the hood of the engine and struck her and threw her to the ground, causing the injuries complained of.

It is urged by appellant that the declaration is insufficient to support the judgment. The principal argument in support of this contention is that the declaration does not aver any causal relation between the alleged negligence of the appellant and the injuries sustained by appellee.

In the court below no demurrer was interposed to the declaration. Upon demurrer a declaration is con-

strued against the pleader, but after verdict, all intendments and presumptions are in its favor. *Sargent Co. v. Baublis*, 215 Ill. 428. In the *Sargent* case the plaintiff recovered a judgment against the defendant growing out of the fact that while he was engaged in a foundry grinding a "knuckle" upon a grindstone, the grindstone flew to pieces and injured him. The declaration avers that the defendant negligently and carelessly permitted the grindstone to be and remain in a defective and dangerous condition, with no statement of what defect existed or in what way it was dangerous. It was argued by the defendant that there was no casual connection between the negligence alleged and the breaking of the grindstone. In its decision the court at page 434 held that "The averment was that the plaintiff, in pursuance of the order of the defendant, was engaged in grinding knuckles upon the grindstone, and while so engaged, and exercising due care and caution for his own safety, the grindstone broke in pieces and fell against him with great force and violence, causing the injury. It was not alleged that the grindstone broke in pieces in consequence or on account of the defect, or what caused it to break, but under the rule already stated the declaration must be regarded as sufficient in that respect after verdict."

In *Plew v. Board*, 274 Ill. 232, 234, the court announced the following rule, "After judgment, the rule by which pleadings before judgment are construed most strongly against the pleader is reversed and the pleading upon which the judgment is based is liberally construed for the purpose of sustaining the judgment." Citing *Chicago & Alton R. R. Co. v. Clausen*, 173 Ill. 100; *Klawiter v. Jones*, 219 Ill. 626; *Sargent Co. v. Baublis;* 215 Ill. 428; *Diamond Glue Co. v. Wietzychowski*, 227 Ill. 338.

Furthermore, we have examined the declaration, and it appears to us that the contention of appellant in this respect is not well taken; each count of the decla-

ration states a cause of action; it certainly cannot be said that where one is put in a condition of fright and peril by the negligent acts of another, the one so placed in such a condition would not be entitled to recover simply because she did not seek the safest refuge open to her.

It is next urged that the verdict is against the manifest weight of the evidence. First, that appellee instead of passing on to the tracks and the south gate being lowered as the automobile in which she was riding came to it, that appellee ran into the north gate and broke it and fell from the automobile before she reached the south gate. Second, that instead of the train standing still and beginning to move towards appellee, as she was crossing the tracks, that the train was moving towards plaintiff when her automobile started across. With reference to these suggestions, appellee and her husband both testified that the north gates were up when they passed on to the tracks, and that as they approached the south gate it was suddenly lowered on to the automobile and that the momentum of the automobile sprung the gate about six feet; that the train was then approaching and as a matter of self-preservation, appellee alighted from the automobile and started to get away from the tracks and the gate sprung back when it was released from the cap of the automobile and struck her and she fell to the pavement. We have examined the evidence that appellant insists tends to contradict the contention of appellee in this respect, and are of the opinion that the verdict corresponds to the weight of the testimony and that it is justified by the evidence.

It is next urged that the court erred in sustaining appellee's objections to the admissibility of the testimony of the witness J. W. Brunner. We have examined the testimony of this witness as it appears in the abstract, and we are not prepared to say that reversible error was committed by the court in its rulings. The

general rule is that the ruling of the court on leading questions is within the discretion of the trial court, and that judgment will not be reversed for a ruling in regard thereto, unless it is manifest that there has been palpable abuse of discretion, and a substantial injury done. It cannot be said from what is disclosed by this record that the ruling of the court in the respects complained of was a palpable abuse of discretion, nor can it be said that substantial injury was done to the rights of appellant.

It is next urged that the court gave improper instructions on the part of appellee, and refused to give proper instructions submitted by appellant. Complaint is made of instructions 13 and 15, which read as follows:—

"13. The court instructs the jury that even if you believe from the evidence in this case that the driver of the automobile in which plaintiff had been riding was guilty of negligence which contributed to the injury in question, if any, still if you further believe from the evidence that the plaintiff was not by her own conduct in any way the cause of such negligence on the part of the driver of the automobile in which plaintiff had been riding and omitted no reasonable or ordinary care on her part for her own safety under all the circumstances in evidence before you, then such negligence, if any, on the part of the said driver of said automobile in which plaintiff had been riding cannot be charged against or imputed to the plaintiff in this suit."

"15. The court instructs the jury that if you believe from a preponderance or greater weight of the evidence in this case, under the instructions of the court, that the automobile in which plaintiff was riding had passed south along North Kellogg Street towards the point where the tracks of the defendant crossed said Kellogg Street and had passed upon said tracks, and if you further believe from the evidence, under the instructions of the court, that the gates at said cross-

ing were then lowered by defendant's employee without warning to plaintiff or the driver of the car in which plaintiff was riding, and if you further believe from the evidence, under the instructions of the court, that the location, situation, circumstances, and surroundings were such that it was the duty of the defendant, through its servants and agents, to cause warning to be given that said gates were about to be lowered, then and in that case such failure, if any, on the part of defendant to give such warning constituted negligence on the part of the defendant.''

It will be seen that instruction 13 told the jury that the negligence of the driver of the automobile in which appellee was riding could not be imputed to her, if she was not in any way the cause of such negligence, and omitted no ordinary care for her own safety. This is true even though the driver happened to be the husband of appellee. *Bohlen v. Chicago City Ry. Co.*, 141 Ill. App. 261–263; *Cleveland, C., C. & St. L. Ry. Co. v. Dukeman*, 130 Ill. App. 105–108.

We are of the opinion that instruction 13 contains an exceedingly accurate expression of the duty of a passenger in an automobile under the circumstances disclosed in this record.

Instruction 15 informed the jury that if appellant, without warning, lowered the crossing gates while the auto in which appellee was riding was on appellant's tracks, and that the location, situation and surrounding circumstances were such that it was appellant's duty to give warning, then and in that case such failure, if any, to give such warning constituted negligence on the part of appellant. The instruction did not direct a verdict. It left the question of negligence entirely to the jury and is not subject to the criticism made against it.

A number of instructions offered by appellant were refused and it complains of the actions of the court in refusing them. We have examined the refused in-

structions and we are of the opinion that the court did not commit any substantial error in denying them. The instructions, taken as a series, fully advised the jury as to the law applicable to the case.

We are of the opinion that substantial justice has been done and that the judgment of the circuit court of Knox county should be affirmed, which is accordingly done.

*Judgment affirmed.*